UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEVIN THOMAS WEAVER | * | CIVIL ACTION |
| VERSUS | * | NO. 22-3747 |
| RANDY SMITH, ET AL. | * | SECTION "E" (2) |

### REPORT AND RECOMMENDATION

Plaintiff Devin Thomas Weaver filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the St. Tammany Parish Sheriff's Department, Sheriff Randy Smith, Assistant Warden Rhonda Simmons, and Deputies Brandon Audibert, David Moody, Ashton McLaughlin, Mike Molinary, and Jude St. Clair. This matter was referred to the undersigned magistrate judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. LR 73.2(A).

Having considered the record, including Plaintiff's complaint, his § 1983 fact statement, *Spears* hearing testimony, and the applicable law, the undersigned enters the following findings and recommendations.

## I.    BACKGROUND

Weaver filed this *pro se* prisoner civil rights suit under 42 U.S.C. § 1983 alleging the use of excessive force and failure to protect him on two occasions during his time as an inmate at St. Tammany Parish Jail ("STPJ"). Plaintiff seeks appointment of counsel and suspension without pay, demotion in rank, and mandatory training for Defendants. ECF No. 4, ¶ V, at 8.

### A.    Factual Allegations in the Complaint

Weaver alleges that the first incident occurred "about two years ago," while he was housed in solitary confinement. Allegedly, deputies whom he cannot identify cut his one hour of

recreation time short and sent him back to his cell.  Plaintiff asked over the speaker why this happened and covered the camera to get deputies' attention.  As punishment for those acts, his personal items were removed.  Plaintiff asserts that he tried talking to the deputies to explain his actions to the deputies so that he could get his things back, but the deputies entered the cell while he was using the toilet, which forced him to jump off with toilet paper stuck to his soiled fingers. When a deputy tried to handcuff him, he noticed feces on Plaintiff's hand and another deputy sprayed his eyes with mace.  Weaver was later arrested on unspecified charges arising from this incident which he believes were still pending when suit was filed.  He also contends that, during that same time period, deputies would only allow inmates to use the showers after they screamed for hours.  He alleges that deputies would enter the open cell and spray mace into the crack of the door, which asserts happened to him multiple times and caused temporary breathing problems.

Weaver contends that the second incident occurred on August 11, 2022,[1] when defendants, Deputies Audibert, Moody, McLaughlin, Molinary, and St. Clair, gave Weaver commands to stop fighting with another inmate.  ECF No. 4, at 4.  Weaver alleges that Deputy St. Clair tasered him in his mid-back and the other inmate ran out of the cell while striking plaintiff and Deputy St. Clair.  Plaintiff alleges that, due to the taser, he fell to the floor and was unconscious for an unknown period of time.

**B.**      **Reply to § 1983 Response Order (ECF No. 8)**

Weaver clarifies the names of several defendants: Deputy Brandon Audibert, Deputy Ashton McLaughlin, and Deputy David Moody.  ECF No. 8, ¶ 1, at 1.  He adds the St. Tammany Parish Sheriff's Department as a responsible party, but it was not named in his complaint.  *Id*.

---

[1]  Weaver wrote "08/11/12" as the incident in his complaint; however, based on the attachments and other pleadings, it appears he meant August 11, 2022.  *See* ECF No. 4-1, at 1 (Disciplinary Continuation Sheet); ECF No. 8, ¶3, at 2 (Reply to § 1983 Response Order).

Weaver indicates that he was convicted by a jury before United States District Judge Lance Africk on July 12, 2022, but does not identify the charges. *Id*., ¶2. He has attached a copy of the presentence investigation report, which indicates that he was charged with carjacking, use and carry of a firearm during a crime of violence, and felon in possession of a firearm. *Id*. at 8.

As a statement of facts, he refers the court to the Disciplinary Continuation Sheets dated August 11, 2022, which are attached to the reply and the complaint. *Id*., ¶3, at 2; *id*. at 3-6; *see also* ECF No. 4-1, at 1-13. He also references video footage from the A-400 housing unit. ECF No. 8, ¶3, at 2; *id*. at ¶4.

### C. *Spears* Hearing Testimony

On February 26, 2024, I conducted a telephone conference in this matter. Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.

#### 1. First Incident

Weaver alleges that deputies wrongly cut his recreation time short and used excessive force against him after he spoke with a female inmate during his recreational time. He indicated that the incident occurred "over two years ago," but could not be more specific. He was able to recall, however, that the incident occurred during the COVID pandemic because inmates were in isolation. His best guess was that it was at least in 2020. Weaver was in solitary confinement at the time because of a pending case involving a co-defendant with whom he could not be in the same facility. He alleges that he was in solitary confinement for four to six months. He was supposed to have one hour of recreational time each day.

On the date in question, Weaver left his cell, went to take a shower during his allotted one hour of recreation time, and began speaking through a door to a female inmate who was being

quarantined in the next room.  A deputy told Weaver and the female inmate to stop communicating and called for backup.  Weaver was then escorted back to his cell after just fifteen minutes of recreational time, although he was supposed to have one hour of recreation time per day.  When Weaver returned to his cell, he tried to explain himself to the officers by calling down the hallway and pressing a button in his cell.  No one came to his cell, so Weaver decided to cover the camera in the cell to "get their attention."  He does not believe that covering cameras was against the rules, nor did anyone tell him he had violated the rules.

After fifteen minutes passed without the arrival of any deputies, Weaver began using the restroom.  Unnamed deputies eventually noticed Weaver had covered the camera and approached his cell at that time to ask him to uncover the camera so they could talk.  The officers announced they were entering the cell and directed Weaver to "get on the rack."  Weaver explained he could not do so because he was using the toilet.  The deputies repeated the command, so Weaver quickly complied.  In the rush, he had gotten feces on his hand.  When an officer attempted to handcuff Weaver and noticed the feces, the officer evacuated the cell while another deputy sprayed Weaver with mace.  Weaver does not remember the name of the officer but believes his last name starts with "M."  The officer scratched Weaver's back with the handcuffs in the process.

After Weaver was sprayed with mace, he stood up and indicated that he could not breathe or see, so the deputies brought him to wash his eyes.  The officers then removed Weaver's personal items from his cell, instructed him not to cover the cameras, and told him they would return his items in a certain amount of time, which they did a few hours later.  Weaver was not provided any additional recreational time that day.  He contends that he was taken back to his cell early that day as punishment for speaking with the female inmate.  Weaver testified that he was charged with either assault or battery on an officer for this incident, but the charges were later dismissed.

### 2.  Tasing Incident

On August 11, 2022, Weaver got into a verbal disagreement about the television with another inmate named Barnes.  Weaver did not know Barnes before he was incarcerated and had not previously fought with Barnes.  The verbal exchange quickly turned physical, and Weaver did not have time to report Barnes' threat to jail officials before the fight began.  Weaver contends that Barnes started the fight and was the first to swing.  At some point, Weaver grabbed a broomstick, which later broke in two.  Each inmate took half.  No officers were around when the fight began, and it took roughly four minutes for deputies to arrive.  In the meantime, both Weaver and Barnes had thrown punches.

Deputy St. Clair arrived with a taser and instructed Weaver to put his hands behind his back.  Weaver surrendered, at which point Deputy St. Clair restrained Weaver's hands and pressed his taser into Weaver's back.  Another deputy took the broomstick piece that Weaver was using as a weapon.  No one had restrained Barnes by that point and Weaver alleges the other officers stood by while Barnes continued to punch at Weaver.  Deputy St. Clair then suddenly dry tased Weaver, who fell to the ground.  Weaver believes he was tased for multiple seconds.  The taser left two prong marks and bruises on his back.  Another inmate, Smith Percy, eventually intervened to pull Barnes off of Weaver.  Weaver woke up from the fight with a swollen face and jaw, bruises on his wrist, and a headache, and he was escorted by deputies to medical.  The medical staff prescribed ibuprofen for the headache and back pain.  They also asked Deputy St. Clair if he wanted treatment because the deputy had accidentally tased himself.

Weaver filed a grievance regarding the fight.  He communicated with the Warden, who called him in and showed him video surveillance of the fight.  Weaver indicated that he was defending himself and the officers did nothing to protect him.  The Warden asserted that Weaver

was at fault, but Weaver disagreed.  Weaver received a disciplinary write-up for the fight but believes it was thrown out because he did not receive a punishment.

### 3. Defendants

Weaver testified that he named Sheriff Randy Smith as a defendant because of the Sheriff's supervisory role and negligent training of his deputies.  Weaver indicated that Sheriff Smith had no personal involvement in the August 11, 2022 tasing incident.  Weaver likewise named Assistant Warden Simmons because of her role as Assistant Warden and her responsibility for her subordinates.  She was not personally involved in the August 11, 2022 tasing incident.

Deputy Mike Molinary was named because he was one of the officers who appeared at the incident and took the broomstick away from Weaver.  Deputy Jude St. Clair was named because he dry-tased Weaver and otherwise improperly reacted to the situation.  Deputies Audibert, McLaughlin, and Moody were named because they stood by during the incident and failed to intervene.

## II.  **LEGAL STANDARD**

As a prisoner seeking redress from an officer or employee of a governmental entity, Weaver's Complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2]  Because he is proceeding *in forma pauperis*, the Complaint is also subject to screening under § 1915(e)(2). Both §§ 1915(e)(2)(B) and 1915A(b) provide for *sua sponte* dismissal of a complaint, or any portion thereof, if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

### A.  **Statutorily Required Screening**

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint

---

[2] *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam).

for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[3]  A claim is frivolous if it "lacks an arguable basis in law or fact."[4]  A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[5]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[6]  A court may not dismiss a claim simply because the facts are "unlikely."[7]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[8]  The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[9]  The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[10]

---

[3] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F. 3d at 579-80.

[4] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citation omitted).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.(Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[5] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[6] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

[7] *Id*.

[8] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[9] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).

[10] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and quoting *Twombly*, 550 U.S. at 544).

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[11]   Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"[12]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. PROC. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[13]   If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[14]   "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[15]

## B.  **The *Spears* Hearing**

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[16]   The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[17]   "[T]he *Spears* procedure affords the plaintiff an opportunity to

---

[11] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Off.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 n.10 (5th Cir. 2017)).

[12] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

[13] *Moore*, 976 F. 2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).

[14] *Id.*

[15] *Id.*

[16] *Spears*, 766 F.2d at 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

[17] *Id.*

verbalize his complaints, in a manner of communication more comfortable to many prisoners."[18] The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e).[19]  The testimony from the *Spears* hearing will supersede the allegations of the plaintiff's complaint.[20]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[21]

The court may make only limited credibility determinations in a *Spears* hearing and may consider and rely on documents as additional evidence if they are properly identified, authentic, and reliable.[22]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[23]

## III.  LAW AND ANALYSIS

### A.  Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[18] *Davis*, 157 F.3d at 1005–06.
[19] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990); *Carmouche v. Hooper*, 77 F.4th 362, 368 (5th Cir. 2023) (explaining that the primary means that have evolved for remedying a prisoner's pleadings are a *Spears* hearing or questionnaire that permits the prisoner to bring into focus the factual and legal bases of his claims) (cleaned up); *see also Maxwell v. Almanza*, No. 21-11239, 2023 WL 6172020, at *1 & n.3 (5th Cir. Sept. 22, 2023) (unreported) (stating that a *Spears* hearing is an "evidentiary hearing in the nature of a FED. R. CIV. P. 12(e) motion for more definite statement) *Jarvis v. Hall*, No. 22-60098, 2023 WL 3818377, at *2 & n.3 (5th Cir. June 5, 2023) (unreported) (noting that district courts usually grant pro se plaintiffs an opportunity to remedy perceived errors in his complaint through a "questionnaire or in a Spears dialog."  (citing *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)).
[20] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[21] *Spears*, 766 F.2d at 182.
[22] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton*, 504 U.S. at 25; *Wilson*, 926 F.2d at 482).
[23] *Id.*

secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[24]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[25]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;

(2)    that occurred under color of state law; and

(3)    was caused by a state actor.[26]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[27] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[28]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[29]

### B.  Weaver's § 1983 Claims regarding the 2020 Incident are Time-Barred

Weaver alleges that his constitutional rights were violated when STPJ prison officials cut short his recreational time, sprayed him with mace, and temporarily removed his personal items after he interacted with a female inmate on some unspecified date about two years ago or early during the COVID-19 pandemic.

---

[24] 42 U.S.C. § 1983.

[25] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[26] *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

[27] *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted).

[28] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[29] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).

Section 1983 does not itself prescribe a statute of limitations, thus a suit brought under that statute is subject to "the general statute of limitations governing personal injuries in the forum state."[30]  Federal courts likewise give effect to any applicable tolling provisions provided by state law in § 1983 actions provided same are not inconsistent with federal law or policy.[31]  Louisiana has a one year statute of limitations or, more accurately, a one-year prescriptive period for personal injury claims.[32]  "The running of prescription under Louisiana law may be suspended or tolled for equitable reasons which have been expressed in the civilian legal principle of contra non valentem."[33]  The doctrine is applicable in several situations[34] and ultimately serves to "'recognize[ ] that in limited circumstances prescription should not run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible."[35]

Weaver does not remember the exact date of the recreational time incident but indicates at one point that the event occurred "about two years ago" and also testified it was sometime during the COVID-19 pandemic in "at least 2020."  As the incident allegedly occurred at least two years ago or earlier, Weaver's constitutional claims regarding same under § 1983 would be time-barred.  Moreover, Weaver has not asserted any cause or condition that necessitates application of the doctrine of contra non valentem.  His complaint and testimony reflect that, more than one year prior to his filing of this case, Weaver knew of Defendants' allegedly unconstitutional use of force

---

[30] *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001)); *see also Hearn v. McCraw*, 856 F. App'x 493, 495-96 (5th Cir. 2021) ("Because § 1983 does not provide a statute of limitations, courts borrow from state law. . . [a]nd typically, courts look to a state's statute of limitations for personal injury torts.") (Citing *Wallace v. Koto*, 549 U.S. 384, 387 (2007)).
[31] *Broussard v. Brown*, 599 F. App'x 188  (5th Cir. 2015) (per curiam) (citing *Hardin v. Straub*, 490 U.S. 536, 542 (1989); *see also Simms v. Harris*, No. 08-4136, 2009 WL 1607906, at *8 (E.D. La. June 2, 2009) (citing cases).
[32] LA. CIV. CODE art. 3492.
[33] *Simms*, 2009 WL 1607906, at *8.
[34] *Broussard*, 599 F. App'x at 188-89.
[35] *Simms*, 2009 WL 1607906, at *8 (quoting *Pracht v. City of Shreveport*, 830 So.2d 546, 551 (La. App. 2d Cir. 2002)).

and denial of recreational time.  The record establishes no condition that might have tolled the statute of limitations or warranted the application of contra non valentem.

District courts may *sua sponte* dismiss claims as frivolous under § 1915(e) where it is clear from the face of the complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations.[36]  Accordingly, Weaver's § 1983 claim regarding the 2020 incident should be dismissed with prejudice.

### C. Improper Defendant

Although Weaver did not name the St. Tammany Parish Sheriff's Department in his Complaint, he identified same as a "responsible party" in reply to the Court's § 1983 Response Order.  ECF No. 8.  To recover under § 1983, the plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.[37]  "However, a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action."[38]  The State of Louisiana grants no such legal status to any law enforcement office or department.[39]  Further, the Sheriff's Department is not a "person" for purposes of § 1983 liability.[40]

Because the St. Tammany Parish Sheriff's Department is not a person or suable entity to be held liable under § 1983, Weaver's claims against it must be dismissed pursuant to 28 U.S.C.

---

[36] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)) (referencing § 1915(d), which was superseded by 28 U.S.C. § 1915(e)(2)(B) as a part of the Prison Litigation Reform Act of 1996).

[37] *See Flagg Bros., Inc.*, 436 U.S. at 155–56 (stating the respondents are first bound to show that they have been deprived of a constitutional right and that the individual, i.e., the Flagg Brothers, deprived them of this right).

[38] *Francis v. Terrebonne Par. Sheriff's Off.*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (citing *Cozzo v. Tangipahoa Par. Council-Pres. Govt.*, 279 F.3d 273, 283 (5th Cir. 2002); *Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); *Fitch v. Terrebonne Par. Sheriff Dep't*, No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006); *Martinez v. Larpenter*, No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); *Causey v. Par. of Tangipahoa*, 167 F. Supp.2d 898, 904 (E.D. La. 2001); *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988)); *Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (citing LA. REV. STAT. ANN. § 33:361).

[39] *Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dep't*, 350 So. 2d 236, 238 (La. App. 3d Cir. 1977).

[40] *Calhoun v. Sanderson*, No. 01-3765, 2003 WL 1595088, *5 (E.D. La. Mar. 25, 2003) (citation omitted); *Creppel v. Miller*, No. 92-2531, 1993 WL 21408, *1 (E.D. La. Jan. 22, 1993) (citation omitted).

§ 1915(e) and § 1915A as frivolous, and otherwise for failure to state a claim upon which relief can be granted.

**D.  <u>Supervisory Liability</u>**

Weaver named Sheriff Smith and Assistant Warden Simmons as defendants based on their supervisory positions over STPJ deputies.  Weaver testified at the Spears hearing that neither Sheriff Smith nor Assistant Warden Simmons had any personal involvement in the 2022 fight with the other inmate or the actions or inactions by the Deputy Defendants.

To hold a defendant personally liable under § 1983, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[41]  Weaver has not alleged that Sheriff Smith or Assistant Warden Simmons were personally involved in any acts causing the alleged deprivation of his constitutional rights.  He further fails to allege that a causal connection exists between any act of Sheriff Smith or Assistant Warden Simmons and the alleged constitutional violations.

There is no *respondeat superior* liability under section 1983.[42]  Thus, the Sheriff and the Assistant Warden cannot be held liable under § 1983 pursuant to a theory of *respondeat superior* simply because Deputies St. Clair, Molinary, Audibert, McLaughlin, and Moody were in their employ or under their supervision.[43]  Instead, the plaintiff must establish that he suffered a constitutional violation or physical injury directly resulting from an order, policy, or directive

---

[41] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114-15 (5th Cir. 2006).
[42] *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009); *see Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no *respondeat superior* liability under section 1983."); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114-15.
[43] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).

implemented by the sheriff to create vicarious liability under § 1983.[44]  Weaver, however, has not referenced any order, training, or other policy implemented by the Sheriff or the Assistant Warden that factored into the events about which he complains.

Weaver has alleged no personal action by or connection with Sheriff Smith or Assistant Warden Simmons to hold either liable under § 1983 based on the actions of the deputy defendants. Thus, Weaver's claims against Sheriff Smith and Assistant Warden Simmons should be dismissed with prejudice pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

### E.  Failure to Train

Weaver did not assert a failure to train claim against Sheriff Smith in his Complaint but rather claimed that he named "Randy Smith for being the employer of these unresponsible, unmerciful, unjust deputies."  ECF No. 4 at 4.   During the *Spears* hearing, however, Weaver testified that he also named Sheriff Smith because the sheriff failed to adequately train his subordinates to perform "take downs."

To hold a supervisory official liable for failure to train a subordinate, a plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference.[45]  An official acts with "deliberate indifference" when (1) he is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and (2) he draws the inference.[46]

---

[44] *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (Supervisory officials "are not liable for the actions of subordinates on any theory of vicarious liability" and will only be liable if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.").
[45] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (citation omitted).
[46] *Id*. (citing *Farmer*, 511 U.S. 825, 837; *Wilson v. Seiter*, 501 U.S. 294 (1991)).

Weaver has not pled any facts in support of his failure to train claim despite his multiple opportunities to do so.  Instead, he offers nothing more than bare, conclusory allegations that do not rise above a speculative level.  "As such, the allegations are conclusory and not entitled to be assumed true."[47]  Accordingly, Plaintiff has failed to plead sufficient allegations to satisfy the plausibility standard, and thus, his failure to train claim against Sheriff Smith should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.

## F. Excessive Force Claim

Weaver contends that he was subjected to unconstitutional excessive force on August 11, 2022 when Deputy St. Clair tased him while attempting to break up a fight between Weaver and another inmate.

The Eighth Amendment forbids prison officials from using force against inmates that constitutes cruel and unusual punishment.[48]  When considering whether force is excessive, and therefore unconstitutional, the "core judicial inquiry" is not "whether a certain quantum of injury was sustained," but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm."[49]  An excessive force claim also involves subjective and objective components.[50]

"The subjective component requires the plaintiff to establish that the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'"[51]  The Fifth Circuit recognizes that prison officials may violate an inmate's Eighth Amendment rights when they "use

---

[47] *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).
[48] *Maxwell v. Almanza*, No. 21-11239, 2023 WL 6172020, at *2 (5th Cir. Sept. 22, 2023) (citing *Hudson v. McMillian*, 503 U.S. 1, 5-7 (1992).
[49] *Hudson*, 503 U.S. at 7; *accord Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998); *Comeaux v. Sutton,* 496 F. App'x 368, 370 (5th Cir. 2012) (per curiam) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37(2010)).
[50] *Mosley v. White*, 464 F. App'x 206, 211-12 (5th Cir. 2010) (per curiam).
[51] *Id*. (quoting *Hudson*, 503 U.S. at 8); *accord Maxwell*, 2023 WL 6172020, at *2.

gratuitous force against a prisoner who has already been subdued,"[52] and has noted that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[53]  For example, the court has held that an officer used excessive force when he punched a handcuffed prisoner in the face.[54]

The objective component requires plaintiff to demonstrate that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.[55]  While the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury,[56] an inmate must allege more than a *de minimis* injury from the altercation or excessive force in order to state an Eight Amendment Claim, unless the use of force is "repugnant to the conscience of mankind."[57]  To determine whether injury caused by excessive force is more than *de minimis* under the Eighth Amendment, courts must consider the context in which the force was used and all the surrounding circumstances.[58]  Relevant factors include (1) the extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.[59]

---

[52] *Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018) (citation omitted).

[53] *Cowart v. Erwin,* 837 F.3d 444, 454 (5th Cir. 2016).

[54] *Waddleton*, 750 F. App'x at 256 (citation omitted).

[55] *Id.*; *accord Payne v. Parnell*, 246 F. App'x 884, 887 (5th Cir. 2007).

[56] *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson v. McMillia*n, 503 U.S. 1, 4 (1992)).  In *Wilkins*, the Supreme Court confirmed that the standards established in *Hudson* remain the law.

[57] *See generally Wilkins*, 559 U.S. at 34 (overturning lower court decision and finding injuries from officer's beating inmate consisting of bruised heel, lower back pain, increased blood pressure, migraine headaches, dizziness, psychological trauma, and mental anguish to be more than *de minimis*); *Hudson*, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotations and citations omitted).

[58] *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

[59] *Hudson*, 503 U.S. at 7 (citation omitted); *see also Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

At the screening stage of Weaver's case, his assertions must be construed in his favor, without credibility determinations.[60]  Even accepting Weaver's allegations as true, however, he has failed to state a cognizable Eighth Amendment excessive force claim against Deputy St. Clair.

Although the Fifth Circuit has not expressly addressed the use of taser guns to subdue convicted inmates in the excessive force context,[61] prison officials are accorded wide-ranging deference when making quick and decisive decisions in volatile situations.[62]  Generally, in addressing whether a pretrial detainee has stated an excessive force by tasing claim turns on the officer's intent:

> [I]f an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim. But if the use of force is deliberate—*i.e.*, purposeful or knowing—the pretrial detainee's claim may proceed.

*Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015).  Also relevant is whether the plaintiff was actively resisting arrest.[63]

Bearing in mind these intent and active resistance inquiries and the Fifth Circuit's findings of excessive force where a prison official inflicts harm upon a restrained inmate, the court finds that Weaver has not stated a claim that moves past the possible, to establish a plausible claim, of excessive force.  The allegations, as supplemented by the *Spears* testimony, reflect a claim premised on Deputy St. Clair's taser of Weaver in connection with quelling an ongoing altercation.

---

[60] *Moore* 976 F.2d at 270.

[61] *Hmeid v. Nelson Coleman Corr. Ctr.,* No. 18-3449, 2018 WL 4922381, at *7 (E.D. La. Aug. 15, 2018) ("The Fifth Circuit has not expressly addressed the use of taser guns to subdue a convicted inmate's noncompliance with procedural orders.") (citing cases), *R. & R. adopted*, No. 18-3449, 2018 WL 4909898 (E.D. La. Oct. 10, 2018).

[62] *Hudson*, 503 U.S. at 6-7 (citations omitted); *see also Jefferson v. Strain*, No. 13-0328,  2013 WL 4776499, at *10 (E.D. La. Sept. 4, 2013) (citing *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.1993); *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir.1998)).

[63] *Compare Poole v. City of Shreveport*, 691 F.3d 624, 626 (5th Cir. 2012) (holding that the use of a taser was not excessive where the arrestee was resisting arrest and the officers ceased use of the taser once the arrestee was handcuffed and subdued) *with Ramirez v. Martinez*, 716 F.3d 369, 378-79 (5th Cir. 2013) (use of force clearly excessive and objectively unreasonable where an officer tased an arrestee a second time *after* the arrestee was already handcuffed).

While Weaver's testimony reflects that Deputy St. Clair was restraining Weaver's hands behind his back, he was not yet handcuffed or removed from the scene of the fight.[64] Further, Weaver testified that the other inmate was actively throwing punches at Weaver and Deputy St. Clair. According to Weaver, at the moment Deputy St. Clair tased him, the deputy was dodging punches from the other inmate while attempting to restrain Weaver's hands, while also holding his taser. In the process, the deputy tased both Weaver and himself.

These facts reflect an accident that occurred while Deputy St. Clair was engaged in a "good-faith effort to maintain or restore discipline," not the use of a taser to "maliciously or sadistically" cause harm. While it certainly would have been more prudent for Deputy St. Clair to holster his taser before attempting to cuff Weaver, the negligent failure to do so is insufficient to state a § 1983 claim. Indeed, the accidental triggering of a taser falls short of a cognizable excessive force claim[65] because such an act of negligence lacks the required intent to cause harm.

Moreover, even if Weaver had stated a plausible excessive force claim, he has failed to set forth facts reflecting more than a *de minimis* injury under the *Hudson* factors. Weaver testified that he "blacked out" from the "stuns of the taser and strikes of the inmate" and identifies two prong marks and bruises on his back from the taser, a swollen face and jaw from the fight, a bruise on his wrist, and headaches. These temporary ailments are *de minimis* injuries insufficient to support an excessive force claim.[66] Accordingly, Weaver's excessive force claim against Deputy

---

[64] *Cf. Hmeid*, 2019 WL 5294936, at *5 (finding prisoner stated a cognizable claim for excessive force where he alleged that the defendants unnecessarily tased and then kicked and punched the plaintiff after he was restrained in handcuffs).

[65] *Kingsley*, 576 U.S. at 396; *accord Ball v. Marion Cnty.,* No. 20-1, 2020 WL 9107787, at *2 (S.D. Miss. Nov. 18, 2020) (recommending dismissal of plaintiff's excessive force claim against police officer who discharged his taser by accident because the allegation amounted to a claim of negligence that did not rise to the level of a constitutional violation) (citing *Coleman v. Marion Cty.,* No. 14-185, 2015 WL 5098524, at *10 (S.D. Miss. Aug. 31, 2015); *Sanders v. Corr. Ctrs. Of Am*., No. 09-014, 2009 WL 2473638 (N.D. Miss. Aug. 12, 2009)), *R. & R. adopted*, No. 20-1, 2021 WL 1299202 (S.D. Miss. Apr. 7, 2021).

[66] *See Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (recognizing that abrasions, bruises, bloody urine, and high blood pressure and heart rate are *de minimis* injuries insufficient to support an excessive force claim); *Brooks v.*

St. Clair should be dismissed with prejudice pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

### G. **Deputies Moody, Audibert, Molinary, and McLaughlin**

Weaver contends that Deputies Audibert, Moody, Molinary, and McLaughlin violated his constitutional rights when they stood by without taking action while Deputy St. Clair tased him and inmate Barnes continued to punch him. Such an allegation could fall under two theories of recovery, bystander liability and failure to protect.

#### 1. **Bystander Liability**

"An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act."[67] The Fifth Circuit has found that officers have a reasonable opportunity to intervene if they are present at the scene and that they violate their duty to intervene if their conduct demonstrates they acquiesced to the unconstitutional conduct engaged in by others.[68] However, an officer's mere presence, without more, does not give rise to a bystander liability claim.[69] "A plaintiff must establish that the officer 'knows that a fellow officer is violating an individual's constitutional rights.'"[70] "Bystander liability applies where a plaintiff properly alleges another officer's use of excessive force."[71]

---

[67] *City of W. Point,* 639 F. App'x 986, 990 (5th Cir. 2016) (finding that abrasions to hands and knees, some neck and back pain, and unspecified problems with asthma are *de minimis* injuries).

[67] *Austin v. City of Pasadena,* 74 F.4th 312, 331 (5th Cir. 2023) (quoting *Joseph on behalf of Est. of Joseph v. Bartlett,* 981 F.3d 319, 324 (5th Cir. 2020)) (internal quotations omitted).

[68] *Id.* (citing *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995) and *Timpa v. Dillard,* 20 F. 4th 1020, 1029 (5th Cir. 2021) and noting that *Hale* is clearly established law that provides fair notice to officers of their duty to intervene, rather than to acquiesce, in the unconstitutional conduct of others).

[69] *Brown v. Wilkinson Cnty. Sheriff Dep't,* 742 F. App'x 883, 884 (5th Cir. 2018) (per curiam).

[70] *Skinner v. Gautreaux,* 593 F. Supp. 3d 383, 396 (M.D. La. 2022) (quoting *McDonald v. McClelland,* 779 F. App'x 222, 226 (5th Cir. 2019) (per curiam)).

[71] *Carillo v. Buendia,* No. 20-28, 2020 WL 4584380, at *14 (S.D. Tex. Aug. 10, 2020) (citing *Hale,* 45 F.3d at 919).

Weaver has not alleged any facts reflecting the other deputies' knowledge that Deputy St. Clair was violating Weaver's constitutional rights by tasing him.  In fact, although Weaver alleges the officers were present at the scene, it is unclear whether the deputies even knew that Deputy St. Clair tased Weaver whatsoever, much less had a "reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."  "In making the determination of whether or not an officer acquiesced to the excessive force, courts consider duration of the alleged use of force and the location of the suspect in relationship to the observing officer."[72]

At the *Spears* hearing, although Weaver did not allege how long the incident occurred, he testified that the fight and the officer's response to same unfolded quickly and occurred in a crowded setting at the threshold of a prison cell and that the other deputies were "at his 6," presumedly behind him and Deputy St. Clair.  He also testified that he was tased for "multiple seconds."  Given the brief duration of the tasing, the fast-paced actions of the inmates and Deputy St. Clair, and the logistical challenges associated with the location of the incident, Weaver has failed to plead facts supporting the notion that the other deputies knew Deputy St. Clair was about to tase Weaver or had a reasonable opportunity to realize the excessive nature of Deputy St. Clair's force and to intervene in time to stop it.[73]  As such, Weaver's bystander liability claims against Deputies Audibert, Moody, McLaughlin, and Molinary should be dismissed  with prejudice as frivolous and otherwise for failure to state a claim for which relief can be granted.

---

[72] *Skinner*, 593 F. Supp. 3d at 396 (quoting *Garrett v. Crawford*, 2016 WL 843391, at *9 (W.D. Tx. Mar. 1, 2016)).
[73] *See id.* at 397 (bystander liability claim failed as pled because plaintiff failed to allege (1) that the purported bystander had an opportunity to intervene before another officer maced him; (2) that the bystander had any knowledge that the other officer was about to mace plaintiff and (3) the length of time the other officer continued to use force after plaintiff had been restrained).

## 2.  **Failure to Protect**

Weaver alleges that Deputies Molinary, McLaughlin, Moody, and Audibert failed to protect him from continued punches by another inmate "Barnes" after the deputies arrived at the scene of the August 11, 2022 fight between Weaver and Barnes, which fight immediately followed a verbal altercation between the two inmates regarding the television in the recreational room. Given the rapid sequence of events, Weaver did not have an opportunity to tell prison officials about any threatening language from Barnes before the fight began.  Weaver testified that he did not know Barnes, much less consider him a known enemy, before their physical altercation.

The Eighth Amendment's prohibition on cruel and unusual punishment imparts a duty on prison officials to "protect prisoners from violence at the hands of other prisoners."[74]  Not every injury suffered by one prisoner at the hands of another "translates into constitutional liability for prison officials responsible for the victim's safety," however.[75]  To establish a violation of an officer's duty to protect a prisoner, he must show  (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the prison official acted with "deliberate indifference to inmate health and safety."[76]  This is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."[77]

---

[74] *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) citing *Farmer v. Brennan,* 511 U.S. 825, 832-83 (1994) (omission in original)).

[75] *Farmer* at 834.

[76] *Id*. at 280 (quoting *Farmer*, 511 U.S. at 834).

[77] *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." *Norton*, 122 F.3d at 291; *accord Williams*, 797 F.3d at 281.

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment.[78]  To establish deliberate indifference a plaintiff must show a defendant had actual knowledge of a substantial risk to inmate health or safety,[79] by demonstrating (1) the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official "must also draw the inference."[80]  In other words, a plaintiff must establish that the prison official possessed a culpable state of mind.[81]  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."[82]  If the court finds that one of the components of the test is not met, it need not address the other component.[83]  Moreover, the Supreme Court has emphasized that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual punishments."[84] "Accordingly, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."[85]

Weaver appears to claim that the deputies were deliberately indifferent to a substantial risk of inmate-on-inmate violence when they failed to prevent Barnes from striking him after Weaver was restrained by Deputy St. Clair.  In doing so, he fails to allege facts sufficient to establish that any of the deputies possessed a culpable state of mind sufficient to establish deliberate indifference

---

[78] *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); accord *Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976).
[79] *Williams*, 797 F.3d at 281.
[80] *Id.* (quoting *Farmer*, 511 U.S. at 837).
[81] *Verdin v. Larpenter*, No. 19-12965, 2020 WL 1905287, at *5 (E.D. La. Jan. 27, 2020) (citing *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), *R. & R. adopted*, No. 19-12965, 2020 WL 1904004 (E.D. La. Apr. 17, 2020).
[82] *Mace*, 333 F.3d at 626.
[83] *Davis*, 157 F.3d at 1005.
[84] *Farmer* 511 U.S. at 837.
[85] *Williams*, 797 F.3d at 281 (quoting *Farmer* 511 U.S. at 838) (internal quotations omitted).

to a substantial risk of serious harm.  Weaver stated that there was no prior indication that Barnes would attack him, nor had he reported any concerns or fears to the officials.  The incident was spontaneous and occurred when the two inmates' verbal dispute regarding television escalated into physical violence.  Thus, there was no known or substantial risk or any inference to have been drawn by the officers.  Moreover, once the deputies arrived on scene, they had to make "quick and decisive decisions in a volatile situation"[86] occurring in tight quarters at the threshold of a prison cell.  Their alleged decision to step back while Deputy St. Clair restrained Weaver therefore must be accorded "wide-ranging deference."

Further, Weaver has pled no facts reflecting that the other deputies had knowledge that Barnes would continue to attack him in the presence of several officers after being told to stand down.  Even if the officers failed to perceive what may have been a significant risk of substantial harm, an officer's failure to perceive "a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment"[87] in violation of the Eighth Amendment.   Accordingly, Weaver's claims against Deputies Molinary, Moody, Audibert, and McLaughlin for failure to protect him from harm at the hands of another prisoner should be dismissed as frivolous or otherwise for failure to state a claim upon which relief may be granted.

## H.  Appointment of Counsel

As outlined above, Weaver has failed to allege a non-frivolous claim to proceed past screening in this action.  In light of the above findings, the district court should deny Weaver's motion to appoint counsel.

---

[86] *Hudson*, 503 U.S. at 6-7 (citations omitted).  See also *Jefferson v. Strain*, No. 13-0328,  2013 WL 4776499, at *10 (E.D. La. Sept. 4, 2013) (citing *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.1993); *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir.1998)).
[87] *Williams*, 797 F.3d at 281 (quoting *Farmer*, 511 U.S. at 838) (internal quotations omitted).

IV.    <u>**CONCLUSION**</u>

Weaver seeks relief for two alleged constitutional violations that occurred while he was housed in the St. Tammany Parish Jail, the first of which incidents occurred two or more years ago when Weaver was allegedly denied sufficient recreational time and sprayed with mace and the latter of which occurred on August 11, 2022 when Weaver got into a fight with another inmate and was dry-tased by Deputy Judge St. Clair despite his alleged cooperation and physical restraint. The first incident is time-barred.  As to the second incident, the factual allegations reflect only the possibility, not probability, that there was anything more than an accidental tasing, and negligence is insufficient to support a § 1983 claim.  Thus, Weaver has failed to state a non-frivolous claim for relief against any of the defendants.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Appoint Counsel is **DENIED.**

**IT IS RECOMMENDED** that Plaintiff's 42 U.S.C. § 1983 claims against defendants St. Tammany Parish Sheriff's Department, Sheriff Randy Smith, Assistant Warden Rhonda Simmons, and Deputies Jude St. Clair, Brandon Audibert, David Moody, Ashton McLaughlin, and Mike Molinary be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §1915(e)(2) and § 1915A as time-barred, frivolous and/or for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.

1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[88]

New Orleans, Louisiana, this __15th__ day of March, 2024.

DONNA PHILLIPS CURRAULT

UNITED STATES MAGISTRATE JUDGE

---

[88] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).