## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DEVIN THOMAS WEAVER**                                    **CIVIL ACTION**

**VERSUS**                                                           **NO. 22-3747**

**RANDY SMITH, ET AL.**                                       **SECTION: "E" (2)**

## ORDER AND REASONS

Before the Court is a Report and Recommendation[1] issued by the assigned Magistrate Judge recommending the Court dismiss all claims brought by Plaintiff Devin Thomas Weaver ("Plaintiff").[2] For the following reasons, the Court **ADOPTS** the Report and Recommendation and **DISMISSES WITH PREJUDICE** Plaintiff's complaint.

## BACKGROUND

### I.     Procedural Background

Plaintiff is a prisoner currently held at United States Penitentiary Coleman I. On October 28, 2022, Plaintiff, pro se and proceeding in forma pauperis,[3] filed a complaint pursuant to 42 U.S.C. § 1983 against Defendants individually.[4] Plaintiff's factual allegations in his complaint stem from two incidents during Plaintiff's 2019 to 2023

---

[1] R. Doc. 35.

[2] R. Doc. 4.

[3] On October 6, 2022, Plaintiff filed a deficient motion for leave to proceed in forma pauperis. R. Doc. 2. The Clerk of Court issued a Notice of Deficiency and ordered Plaintiff to remedy the deficiency by October 28, 2022. R. Doc. 3. On October 28, 2022, Plaintiff filed a new motion for leave to proceed in forma pauperis. R. Doc. 5. The Magistrate Judge granted this motion. R. Doc. 6.

[4] R. Doc. 35 at pp. 1-2, 6. In Plaintiff's complaint, he calls each Defendant, excluding Deputy Brandon Audibert, by name alone (with no mention of title). R. Doc. 8. In Plaintiff's response to the Court's 1983 response order, Plaintiff includes each Defendant's name and title but does not state whether he is suing them in their individual or official capacity. R. Doc. 8. Plaintiff has not alleged the elements of a *Monell* claim. Plaintiff has had three opportunities, including his response to the Court's 1983 response order, his *Spears* hearing, and his objection to the Report and Recommendation, to request leave to amend his complaint and assert official capacity and *Monell* claims, but he has not done so. The plaintiff has brought only claims against the Defendants in their individual capacities and the Court will not allow the Plaintiff to amend his complaint.

incarceration in the St. Tammany Parish Jail.[5] Plaintiff brings failure to train, excessive force, and failure to protect claims against Defendants.[6]

On March 15, 2024, the Magistrate Judge issued a Report and Recommendation.[7] The Magistrate Judge recommends that Plaintiff's § 1983 claims against Defendants be dismissed with prejudice because the claims are either time-barred or "reflect only the possibility, not probability, that there was anything more than" negligence, "and negligence is insufficient to support a § 1983 claim."[8] Accordingly, the Magistrate Judge recommends that Plaintiff's claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and §1915A because the claims are "frivolous and/or . . . fail[] to state a claim for which relief can be granted."[9]

Plaintiff timely filed an objection to the Report and Recommendation.[10] Plaintiff used his objection to

> further clarify each defendant's legal claim, give a written statement of [his] traumatic stress history as a detainee at St. Tammany Parish Jail . . . . As well as explain why it was complicated . . . to fully verbalize [his] complaint at the *Spears* hearing . . . . Then assert a conclusion that objects to the subordinate officials' misconduct . . . . Then after amend recovery damages for both incidents herein.[11]

First, Plaintiff's objection summarizes his history at the St. Tammany Parish Jail.[12] Plaintiff then tells how it was difficult for him to testify at his *Spears* hearing because "to do so [he] would have to relive . . . unhealed trauma."[13] Next, Plaintiff attempts to

---

[5] R. Doc. 4; R. Doc. 36 at p. 2.
[6] R. Doc. 4. Plaintiff's initial October 6, 2022 complaint, R. Doc. 1, was marked deficient by the Clerk of Court, R. Doc. 3, but Plaintiff timely refiled his complaint. R. Doc. 3.
[7] R. Doc. 35.
[8] *Id.*
[9] *Id.* at p. 24.
[10] R. Doc. 36.
[11] *Id.* at pp. 1-2 (cleaned up).
[12] *Id.* at pp. 2-12.
[13] *Id.* at pp. 13-14.

"amend" his failure to train, excessive force, and failure to protect claims.[14] Finally, Plaintiff "objects to the August 11, 2022 proposed findings and conclusion for the foregoing [sic] reasons."[15] Expanding on his objection, Plaintiff explains that his objection gives "reason to the intentional tasing" and attempts to show "why all actions was [sic] nothing but knowingly as to deliberate indifferent [sic] . . . due to [his] traumatic history at St. Tammany Parish Jail."[16]

In reviewing the Magistrate Judge's Report and Recommendation, the Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.[17] As to the portions of the report that are not objected to, the Court needs only to review those portions to determine whether they are clearly erroneous or contrary to law.[18] Because Plaintiff objected to the Report and Recommendation based on "the foregoing reasons" in his factually detailed objection, out of an abundance of caution the Court construes Plaintiff's objections broadly and will conduct a de novo review of all of the Magistrate Judge's findings.[19]

Plaintiff closes his objection by renewing his request for appointment of counsel and seeking leave to amend his complaint to assert a claim for damages.[20]

---

[14] *Id.* at pp. 14-16.
[15] *Id.* at pp. 20-21 (cleaned up).
[16] *Id.* at pp. 20-21.
[17] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[18] R. Doc. 36 at pp. 20-21.
[19] *Id.*
[20] *Id.* at p. 21. The Court denies the request for counsel and the request to amend.

## II.     Factual background

Plaintiff's complaint is based on two "incidents." The Magistrate Judge summarized the factual basis for Plaintiff's complaint based on Plaintiff's *Spears*[21] hearing testimony:

### A.     The First Incident

Weaver alleges that deputies wrongly cut his recreation time short and used excessive force against him after he spoke with a female inmate during his recreational time. He indicated that the incident occurred "over two years ago," but could not be more specific. He was able to recall, however, that the incident occurred during the COVID pandemic because inmates were in isolation. His best guess was that it was at least in 2020. Weaver was in solitary confinement at the time because of a pending case involving a co-defendant with whom he could not be in the same facility. He alleges that he was in solitary confinement for four to six months. He was supposed to have one hour of recreational time each day.

On the date in question, Weaver left his cell, went to take a shower during his allotted one hour of recreation time, and began speaking through a door to a female inmate who was being quarantined in the next room. A deputy told Weaver and the female inmate to stop communicating and called for backup. Weaver was then escorted back to his cell after just fifteen minutes of recreational time, although he was supposed to have one hour of recreation time per day. When Weaver returned to his cell, he tried to explain himself to the officers by calling down the hallway and pressing a button in his cell. No one came to his cell, so Weaver decided to cover the camera in the cell to "get their attention." He does not believe that covering cameras was against the rules, nor did anyone tell him he had violated the rules.

After fifteen minutes passed without the arrival of any deputies, Weaver began using the restroom. Unnamed deputies eventually noticed

---

[21] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." *Davis v. Scott*, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181-82); *Carmouche v. Hooper*, 77 F.4th 362, 368 (5th Cir. 2023) (explaining that the primary means for remedying a prisoner's pleadings are a *Spears* hearing or questionnaire that permits the prisoner to bring into focus the factual and legal bases of his claims); *see also Maxwell v. Almanza*, No. 21-11239, 2023 WL 6172020, at *1 & n.3 (5th Cir. Sept. 22, 2023) (unreported) (stating that a *Spears* hearing is an "evidentiary hearing in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement") (quoting *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)). The testimony from the *Spears* hearing will supersede the allegations of the plaintiff's complaint. *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." *Spears*, 766 F.2d at 182.

Weaver had covered the camera and approached his cell at that time to ask him to uncover the camera so they could talk. The officers announced they were entering the cell and directed Weaver to "get on the rack." Weaver explained he could not do so because he was using the toilet. The deputies repeated the command, so Weaver quickly complied. In the rush, he had gotten feces on his hand. When an officer attempted to handcuff Weaver and noticed the feces, the officer evacuated the cell while another deputy sprayed Weaver with mace. Weaver does not remember the name of the officer but believes his last name starts with "M." The officer scratched Weaver's back with the handcuffs in the process.

After Weaver was sprayed with mace, he stood up and indicated that he could not breathe or see, so the deputies brought him to wash his eyes. The officers then removed Weaver's personal items from his cell, instructed him not to cover the cameras, and told him they would return his items in a certain amount of time, which they did a few hours later. Weaver was not provided any additional recreational time that day. He contends that he was taken back to his cell early that day as punishment for speaking with the female inmate. Weaver testified that he was charged with either assault or battery on an officer for this incident, but the charges were later dismissed.

## B.      The Tasing Incident

On August 11, 2022, Weaver got into a verbal disagreement about the television with another inmate named Barnes. Weaver did not know Barnes before he was incarcerated and had not previously fought with Barnes. The verbal exchange quickly turned physical, and Weaver did not have time to report Barnes' threat to jail officials before the fight began. Weaver contends that Barnes started the fight and was the first to swing. At some point, Weaver grabbed a broomstick, which later broke in two. Each inmate took half. No officers were around when the fight began, and it took roughly four minutes for deputies to arrive. In the meantime, both Weaver and Barnes had thrown punches.

Deputy St. Clair arrived with a taser and instructed Weaver to put his hands behind his back. Weaver surrendered, at which point Deputy St. Clair restrained Weaver's hands and pressed his taser into Weaver's back. Another deputy took the broomstick piece that Weaver was using as a weapon. No one had restrained Barnes by that point and Weaver alleges the other officers stood by while Barnes continued to punch at Weaver. Deputy St. Clair then suddenly dry tased Weaver, who fell to the ground. Weaver believes he was tased for multiple seconds. The taser left two prong marks and bruises on his back. Another inmate, Smith Percy, eventually intervened to pull Barnes off of Weaver. Weaver woke up from the fight with a swollen face and jaw, bruises on his wrist, and a headache, and he was escorted by deputies to medical. The medical staff prescribed ibuprofen for the headache and back pain. They also asked Deputy St. Clair if he wanted treatment because the deputy had accidentally tased himself.

Weaver filed a grievance regarding the fight. He communicated with the Warden, who called him in and showed him video surveillance of the fight. Weaver indicated that he was defending himself and the officers did nothing to protect him. The Warden asserted that Weaver was at fault, but Weaver disagreed. Weaver received a disciplinary write-up for the fight but believes it was thrown out because he did not receive a punishment.[22]

During Plaintiff's *Spears* hearing, Plaintiff clarified who he sued and why he sued each Defendant. Plaintiff sued Sheriff Randy Smith ("Sheriff Smith") "because of the Sheriff's supervisory role and negligent training of his deputies. [Plaintiff] indicated that Sheriff Smith had no personal involvement in the" Tasing Incident.[23] Similarly, Plaintiff named Assistant Warden Rhonda Simmons ("Assistant Warden Simmons") as a defendant "because of her role as Assistant Warden and her responsibility for her subordinates. She was not personally involved in the" Tasing Incident.[24]

Deputies Jude St. Clair ("Deputy St. Clair"), Mike Molinary ("Deputy Molinary"), Ashton McLaughlin ("Deputy McLaughlin"), David Moody ("Deputy Moody"), and Brandon Audibert ("Deputy Audibert") all were directly involved in the Tasing Incident.[25] Deputy Molinary allegedly took the broom from Plaintiff, Deputy St. Clair allegedly tased Plaintiff "and otherwise improperly reacted to the situation," and Deputies Molinary, McLaughlin, and Moody "were named because they stood by during the incident and failed to intervene."[26]

## **LEGAL STANDARD**

Plaintiff's complaint is subject to preliminary screening before docketing, if feasible, pursuant to 28 U.S.C. § 1915A(b) because he is "a prisoner seek[ing] redress from

---

[22] R. Doc. 35 at pp. 3-6.
[23] *Id.* at p. 6.
[24] *Id.*
[25] *Id.*
[26] *Id.*

6

a governmental entity or officer or employee of a governmental entity." Because Plaintiff is proceeding in forma pauperis, his complaint also may be screened under 28 U.S.C. § 1915(e)(2). The Court may sua sponte dismiss Plaintiff's complaint, or any portion of his complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted under §§ 1915(e)(2)(B) and 1915A(b).[27] A complaint is frivolous "if it lacks an arguable basis in law or fact."[28]

A complaint fails to state a claim on which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[29] "To survive a [Federal Rule of Civil Procedure 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] However, the court does not accept as true legal conclusions or mere conclusory statements.[32] In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[33]

When screening a Plaintiff's complaint under § 1915 and § 1915A, the standard for whether a Plaintiff failed "to state a claim upon which relief may be granted" differs slightly from the Rule 12(b)(6) standard. Both Rule 12(b)(6) and § 1915 demand dismissal if an in forma pauperis complaint fails to state a claim with "even an arguable basis in

---

[27] 28 U.S.C. § 1915A(b)(1).
[28] *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Denton v. Hernandez*, 504 U.S. 25 (1992)).
[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[31] *Id.*
[32] *Id.*
[33] *Twombly*, 550 U.S. at 555.

law."[34] Conversely, if the complaint raises an "arguable question of law" that the "court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate" while dismissal under § 1915 is not.[35]

It is well established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." [36] Regardless of whether the plaintiff is proceeding pro se or is represented by counsel, however, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal.[37] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[38] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[39]

## LAW AND ANALYSIS

## I. Plaintiff's claims related to the First Incident are time-barred.

The First Incident occurred "about two years ago or early during the COVID-19 pandemic" in "at least 2020."[40] "The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." [41] At the time Plaintiff filed suit, Louisiana had a one-year statute of

---

[34] *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

[35] *Id.* at 269-70.

[36] *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

[37] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[38] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

[39] *Cutrer v. McMillan*, 308 Fed. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

[40] R. Doc. 35 at pp. 3-4, 10-11.

[41] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citing *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993)).

limitations/prescriptive period for tort claims.[42] Because the First Incident occurred "about two years" before Plaintiff filed his complaint,[43] Plaintiff's § 1983 claims related to the First Incident are time-barred. Contra non valentem excepts a plaintiff from an applicable prescriptive period "where the cause of action is not known or reasonably knowable by the plaintiff."[44] Plaintiff does not allege, nor does the record show, that the doctrine of contra non valentem, nor any other doctrine that may toll the statute of limitations/prescriptive period, applies to except Plaintiff from the time-bar.[45] Thus Plaintiff's claims related to the First Incident are time-barred.

## II.    The St. Tammany Parish Sheriff's Department is an improper defendant.

Plaintiff did not name the St. Tammany Parish Sheriff's Department as a defendant in his complaint. However, Plaintiff did name the St. Tammany Parish Sheriff's Department as "responsible party" in his response to the Court's § 1983 response order.[46] "[A] parish sheriff's office is not a legal entity capable of being sued in a federal civil rights

---

[42] LA. CIV. CODE art. 3492. Currently, Louisiana's prescriptive period for torts is two years. LA. CIV. CODE art. 3493.1. Plaintiff's claim had already prescribed, as described in the body above, when the legislature altered the prescriptive period in July 2024. Due to this, the one year, not the two year, prescriptive period applies to Plaintiff's claims. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 193 (5th Cir. 2010) (citing *Chance v. Am. Honda Motor Co.*, 635 So. 2d 177, 179 (La. 1994) ("[T]he Louisiana Supreme Court has explicitly declined to retroactively apply a prescription statute to revive an already prescribed cause of action.").

[43] R. Doc. 4 at p. 5; R. Doc. 35 at p. 3.

[44] *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir. 2009) (quoting *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La. 1993)).

[45] *Id.* (explaining the doctrine of contra non valentem).

[46] R. Doc. 8.

action."[47] A sheriff's department also is not a "person" under § 1983.[48] Accordingly, the Plaintiff has no claims against the St. Tammany Parish Sheriff's Department.

## III.   Plaintiff's supervisory liability allegations are insufficient to state a § 1983 claim for the Taser Incident.

Plaintiff brings supervisory liability claims against Sheriff Smith, individually, and Assistant Warden Simmons, individually.[49] Plaintiff "testified at the *Spears* hearing that neither Sheriff Smith nor Assistant Warden Simmons had any personal involvement in the 2022 fight with the other inmate or the actions or inactions by the Deputy Defendants."[50] To state a claim under Section 1983, a plaintiff must allege that the person or entity that deprived him of a federal right was a state actor and was acting under the color of law.[51] When a plaintiff asserts a Section 1983 claim "against any private defendant, . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law."[52]

"In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[53] Plaintiff has not alleged that Sheriff Smith or Assistant Warden Simmons were personally involved or

---

[47] *Francis v. Terrebonne Par. Sheriff's Off.*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (first citing *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002); then *Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); and then *Fitch v. Terrebonne Parish Sheriff Dep't*, No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006); and then *Martinez v. Larpenter*, No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); and then *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); and then *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988)).
[48] *Calhoun v. Sanderson*, No. 01-3765, 2003 WL 1595088, *5 (E.D. La. Mar. 25, 2003).
[49] R. Doc. 35 at p. 6.
[50] *Id.* at p. 13.
[51] *See, e.g., James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994).
[52] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)).
[53] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

causally connected to Plaintiff's alleged constitutional violations. Furthermore, "[t]here is no respondeat superior liability under section 1983."[54] To hold Sheriff Smith and Assistant Warden Simmons individually liable for their subordinates' actions, Plaintiff "must establish that he sustained a deprivation of his constitutional rights as a result of some official policy, practice, or custom of the governmental entity."[55] Therefore Plaintiff's supervisory liability claims against Sheriff Smith and Assistant Warden Simmons fail to state a claim upon which relief can be granted.

## IV. Plaintiff fails to properly allege deliberate indifference on his failure to train claim related to the Taser Incident.

Plaintiff objects to the Magistrate Judge's finding that Sheriff Randy Smith was not deliberately indifferent when he allegedly failed to train his subordinates on how to perform "take downs."[56] To hold a supervisory official, like Sheriff Smith, personally liable for the acts of his subordinates, Plaintiff must allege "(1) the supervisor failed to train or supervise the subordinate; (2) a causal link between the failure to train or supervise and the constitutional violation; and (3) that the failure to train or supervise amounts to deliberate indifference."[57] "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[58]

Plaintiff's factual allegations throughout his pleadings, including his objection, do not support a failure to train claim. In Plaintiff's complaint, he alleges Sheriff Smith is

---

[54] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996).

[55] *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

[56] R. Doc. 36 at pp. 14, 20-21.

[57] *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023) (first citing *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005); then *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)).

[58] *Smith*, 158 F.3d at 912 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

liable as the "employer" of the Defendants involved in the Tasing Incident.[59] There is no respondeat superior liability under Section 1983.[60] Plaintiff added at his *Spears* hearing "that he also named Sheriff Smith because the sheriff failed to adequately train his subordinates to perform 'take downs.'"[61] In Plaintiff's objection, he writes in conclusory fashion that Sheriff Smith failed "to train or supervise" and that this failure "amounted to deliberate indifference with the intent that serious harm existed."[62] The above conclusory allegations are insufficient to plead a claim upon which relief may be granted against Sheriff Smith.[63]

## V.   Plaintiff's allegations do not establish that Deputy St. Clair intended to harm Plaintiff in connection with the Taser Incident.

Plaintiff claims that his history at St. Tammany Parish Jail, as detailed in his objection, casts doubt on the Magistrate Judge's finding that, for purposes of the excessive force claim, Deputy St. Clair "accidentally" tased Plaintiff.[64] The Eighth Amendment's prohibition of cruel and unusual punishment protects individuals from "unnecessary and wanton infliction of pain."[65] In determining whether specific conduct rises to the level of "excessive physical force," courts first evaluate whether the deprivation was objectively serious in light of "contemporary standards of decency."[66] Next, courts consider whether the officials acted with "a sufficiently culpable state of mind."[67] Generally, prison officials are liable for an inmate's claim of excessive force "[w]hen [they] maliciously and sadistically use force to cause harm, [and thereby violate] contemporary standards of

---

[59] R. Doc. 4 at p. 4.
[60] *Eason*, 73 F.3d at 1327.
[61] R. Doc. 35 at p. 14.
[62] R. Doc. 36 at p. 14.
[63] *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).
[64] R. Doc. 36 at p. 20.
[65] *Ingraham v. Wright*, 430 U.S. 651, 671 (1977) (quoting *Estelle v. Gamble*, 429 U.S.  97, 103 (1976)).
[66] *See Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).
[67] *Id.* at 8.

decency." [68] "This is true whether or not significant injury is evident [because,] [o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."[69] While the Fifth Circuit requires an injury to "be more than de minimis," it "need not be significant."[70] However, "when authorities use force to put down a prison disturbance," the excessive force inquiry turns on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"[71]

At his *Spears* hearing, Plaintiff testified that Deputy St. Clair "was dodging punches from the other inmate," "attempting to restrain Weaver's hands," and holding a taser all at the same time.[72] During this scuffle, "the deputy tased both Weaver and himself."[73] This testimony reflects that Deputy St. Clair more likely tased Plaintiff accidentally rather than "maliciously" or "sadistically." Plaintiff does not allege Deputy St. Clair had malicious or sadistic intent to inflict harm on Plaintiff.

Even assuming Deputy St. Clair did intentionally tase Plaintiff, the Magistrate Judge found Plaintiff "failed to set forth facts reflecting more than a *de minimis* injury under the" *Hudson v. McMillian* factors.[74] This led the Magistrate Judge to find that Plaintiff's excessive force claim "should be dismissed with prejudice pursuant to 28 U.S.C. § 1915

---

[68] *Id.* at 9 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).
[69] *Id.*
[70] *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).
[71] *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320-21).
[72] R. Doc. 35 at p. 18.
[73] *Id.*
[74] *Id.* at pp. 18-19.

13

and § 1915A as frivolous and otherwise for failure to state a claim."[75] The Court agrees

with this finding.

## VI.    Plaintiff does not allege a claim upon which this Court can grant relief against Deputies Molinary, McLaughlin, Moody, and Audibert

### A.    Plaintiff fails to allege a proper bystander liability claim.

For § 1983 bystander claims, a defendant "is liable for failure to intervene when

that officer: (1) knew a fellow officer was violating an individual's constitutional rights,

(2) was present at the scene of the constitutional violation, (3) had a reasonable

opportunity to prevent the harm but nevertheless, (4) chose not to act."[76] An individual

has "a reasonable opportunity to intervene if they are present at the scene and . . . they

violate their duty to intervene if their conduct demonstrates they acquiesced to the

unconstitutional conduct engaged in by others."[77] If an individual does "not take

reasonable measures to protect a suspect from . . . use of excessive force," then a plaintiff

may have a viable § 1983 bystander claim.[78]

First, as discussed above, Plaintiff does not allege an excessive force claim upon

which this Court can grant relief.[79]

Second, Plaintiff did not allege facts showing that Deputies Molinary, McLaughlin,

Moody, or Audibert knew that Deputy St. Clair tased Plaintiff or, if they knew he tased

Plaintiff, that the Deputies knew Deputy St. Clair violated Plaintiff's constitutional rights

when he did so.[80] Plaintiff "testified [at his *Spears* hearing] that the fight and the officer's

---

[75] *Id.*
[76] *Austin v. City of Pasadena*, 74 F.4th 312, 331 (5th Cir. 2023) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020)).
[77] *Id.* (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).
[78] *Hale*, 45 F.3d at 919.
[79] *See supra* at pp. 11-13.
[80] R. Doc. 35 at pp. 5-6, 20.

response to [the] same unfolded quickly."[81] Plaintiff has failed to allege facts showing Deputies Molinary, McLaughlin, Moody and Audibert (1) knew Deputy St. Clair used excessive force at any point or (2) had an opportunity to intervene and prevent Deputy St. Clair's alleged use of excessive force. Plaintiff fails to state a bystander claim upon which this Court can grant relief.

### B. Plaintiff fails to allege a proper failure to protect claim relating to the Tasing Incident.

Plaintiff objects to the Magistrate Judge's finding that Plaintiff failed "to allege facts sufficient to establish that during the [Tasing I]ncident any of the deputies possessed a culpable state of mind sufficient to establish deliberate indifference" on his failure to protect claim.[82] Plaintiff alleges that, after Deputy St. Clair restrained Plaintiff, Deputies Molinary, McLaughlin, Moody, and Audibert failed to protect him from Deputy St. Clair's alleged excessive force and Barnes' punches.[83] Since the fight escalated quickly, Plaintiff alleges he did not have the opportunity to warn prison officials before the fight became physical.[84] Prior to Plaintiff and Barnes' fight, Plaintiff did not know Barnes.[85] Plaintiff describes the fight in his objection:

> As inmate Barnes realized that deputy St. Clair was subduing me forcefully, he quickly revealed his presence from the far back of cell A-402 . . . . While the other subordinates' suspicion of St. Clair's excessive force expelled the remorse of inmate Barnes descended. Even then with the reasonable opportunity to intervene as to protect me from further strikes they knowingly stood down. . . . Inmate Smith P. then took it upon himself to acknowledge the situation after realizing the subordinate officials refused to provide any protection.[86]

---

[81] *Id.* at p. 20.
[82] R. Doc. 36 at pp. 15-16, 19-21.
[83] R. Doc. 4 at pp. 4-5; R. Doc. 36 at pp. 15-21.
[84] R. Doc. 35 at p. 21.
[85] *Id.*
[86] R. Doc. 36 at pp. 19-20 (cleaned up).

For the first time, in his objection, Plaintiff details another incident when a "chief staff officer intentionally used force against [him] as other deputies show [sic] no signs of prevention but instead watch in an ominously [sic] way."[87] This incident cannot be considered in connection with this ruling.

"It is well established that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"[88] "A prison official violates the Eighth Amendment only when the inmate shows that (1) he was incarcerated under conditions the official knew posed 'a substantial risk of serious harm' and (2) the prison official was deliberately indifferent to such risk."[89] "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[90] "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."[91]

In addressing Plaintiff's failure to protect claim, the Magistrate Judge found Plaintiff did not properly allege deliberate indifference because Plaintiff did not allege facts that established Defendants' culpability.[92] The fight between Plaintiff and Barnes' was spontaneous. Given this spontaneity, the Deputies could not have anticipated Plaintiff's fight with Barnes and could not have prevented it.

---

[87] *Id.* at p. 8.
[88] *Walker v. Upshaw*, 515 Fed. App'x 334, 338 (5th Cir. 2013) (quoting *Farmer*, 511 U.S. at 832)
[89] *Id.* (quoting *Farmer*, 511 U.S. at 834).
[90] *Smith*, 158 F.3d at 912 (quoting *Farmer*, 511 U.S. at 837).
[91] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003) (citing *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).
[92] R. Doc. 35 at pp. 21-23.

Once the Deputies appeared in response to the fight and restrained Plaintiff, Plaintiff alleges that Barnes "quickly" revealed himself and repeatedly punched Plaintiff.[93] Plaintiff's *Spears* testimony was that the fight and the Tasing Incident "unfolded quickly and occurred in a crowded setting."[94] While it may be true that the Deputies *could have* stepped in sooner to prevent Barnes' punches, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."[95] Plaintiff does not plead facts showing that the Deputies perceived the risk that Barnes posed, knew that Barnes would continually punch Plaintiff, or intended to harm Plaintiff by not stopping Barnes.

Plaintiff's allegation of an earlier issue he encountered with the chief staff officer in which other deputies watched as the chief staff officer "used force against" Plaintiff does not alter this conclusion.[96] Plaintiff does not plead who was involved in this alleged incident. Nor does Plaintiff's allegation that inmate Smith P. "acknowledge[d] the situation after realizing the subordinate officials refuse[d] to provide any protection" change the Court's analysis.[97] An inmate's alleged acknowledgement of Barnes punching Plaintiff has no bearing on the Deputies' subjective understanding of the circumstances. The Court must bear in mind that during a prison fight, "prison officials 'may have had to act quickly and decisively,' and, accordingly, "are entitled to wide-ranging deference."[98]

---

[93] R. Doc. 36 at p. 19.
[94] R. Doc. 35 at p. 20.
[95] *Farmer*, 511 U.S. at 838.
[96] R. Doc. 36 at pp. 19-20.
[97] *Id.* at p. 8.
[98] *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (quoting *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993)).

The Magistrate Judge's finding that Plaintiff's failure to protect claims "should be dismissed as frivolous or otherwise for failure to state a claim upon which relief may be granted" was correct.[99]

<u>**CONCLUSION**</u>

**IT IS ORDERED** that the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 8th day of October, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[99] R. Doc. 35 at pp. 21-23.